UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN YOUSIF and SHARON YOUSIF,

    Plaintiffs,

v.

THE BANK OF NEW YORK MELLON
formerly known as The Bank of New York,
as Trustee for the Certificate Holders of
CWALT, Inc., Alternative Loan Trust 2005-
38, Mortgage Pass-Through Certificates,
Series 2005-38,

    Defendant.
    _____/

Case No. 12-12507

Honorable Patrick J. Duggan

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on June 26, 2012.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

In this action, John and Sharon Yousif ("Plaintiffs") seek to set aside a sheriff's sale of real property located in Bloomfield Hills, Michigan. Before the Court is Plaintiffs' motion for a preliminary injunction and a temporary restraining order tolling the statutory redemption period, filed on June 15, 2012 pursuant to Federal Rule of Civil Procedure 65. The matter has been fully briefed, and the Court heard oral argument on June 25, 2012. For reasons set forth below, the Court denies Plaintiffs' motion.

**I. Background**

In 2005, Plaintiffs obtained an adjustable-rate loan of approximately $1.3 million from American Wholesale Lenders. They signed a promissory note containing "negative amortization" provisions, meaning that the initial payment was less than the interest accruing on the loan. Interest exceeding the payment was added to the principal balance each month. The loan was secured by a mortgage on a home located at 3565 Brookside Drive in Bloomfield Hills, Michigan. This loan was later sold to Defendant. Defendant sold mortgage pass-through certificates to investors, giving these investors the right to obtain income from a pool of loans that included Plaintiffs' loan. The loan was serviced by BAC Home Loans Servicing, L.P. ("BAC Home Loans").

Plaintiffs' monthly payment under this loan was initially $4,163.30, but due to the note's adjustable rate and negative amortization provisions, the payment increased substantially by April 2010. Compl. ¶¶ 25-26. Plaintiffs allege that at about this time, they entered into a loan modification agreement with BAC Home Loans, reducing the monthly payment to $3,722.00. *Id.* ¶ 27. Plaintiffs allegedly made payments under this agreement from May 2010 to September 2011. *Id.* ¶ 30.

During December 2010 or January 2011, Plaintiffs apparently responded to another inquiry regarding a potential loan modification. BAC Home Loans sent Plaintiffs a letter stating that some required documents were missing, and Plaintiffs would need to submit these documents in order to be considered for a loan modification. It is not clear whether the parties entered into an agreement following this correspondence.

Plaintiffs assert that BAC Home Loans unilaterally revoked the loan modification agreement in October 2011. *Id.* ¶ 30. On or about October 20, 2011, Defendant initiated

proceedings to foreclose on the mortgage by advertisement. Defendant published notices of foreclosure in the Detroit Legal News, and a sheriff's sale was scheduled for November 22, 2011. Plaintiffs' counsel sent a series of letters to Defendant's foreclosure counsel, asking for copies of the notice of foreclosure, proof of publication, affidavit of posting, and the notice of loan modification solicitation. *See* Pls.' Br. Ex. F. It is not clear whether Defendant's counsel responded to these letters.

The sheriff's sale was adjourned to January 3, 2012. On that date, Defendant was the successful bidder at the sheriff's sale. *See* Pls.' Br. Ex. A. It appears from the Complaint that Defendant has now instituted summary eviction proceedings against Plaintiffs.

On May 4, 2012, Plaintiffs filed this action in Oakland County Circuit Court. They assert the following claims: quiet title (Count I); violation of Michigan Compiled Laws § 600.3220 (Count II); violation of Michigan Compiled Laws § 600.3205 (Count III); and violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Michigan Compiled Laws § 37.2101 *et seq.* (Count IV). Plaintiffs request that the Court declare the sheriff's sale null and void, dismiss the summary eviction proceedings, and award damages for the violation of Plaintiffs' civil rights.

On June 8, 2012, Defendant removed the suit to this Court on the basis of diversity. Plaintiffs now move for a preliminary injunction and a temporary restraining order tolling the six-month statutory redemption period relating to the foreclosure sale. Plaintiffs argue that if this Court does not grant their request, the redemption period will expire on July 3, 2012, barring their challenge to the foreclosure sale.

## II. Standard of Review

Courts weigh four factors in determining whether to issue a temporary restraining order or preliminary injunction: (1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief. *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010); *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). "'These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together.'" *Blackwell*, 467 F.3d at 1009 (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). The movant bears the burden of establishing his entitlement to injunctive relief. *See Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

### III. Discussion

Plaintiffs seek to toll the statutory redemption period relating to the foreclosure sale. "The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity." *Schulthies v. Barron*, 16 Mich. App. 246, 247-48, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969). The Court therefore considers Plaintiffs' claims to determine whether they establish fraud or irregularity sufficient to extend the redemption period.

**A. Quiet Title**

In Count I, Plaintiffs challenge the sheriff's sale through which Defendant obtained

its interest in the property. First, Plaintiffs assert that Defendant cannot hold title to their mortgage. To the extent that they challenge the assignment of the mortgage to Defendant, their claim is barred. "[A] litigant who is not a party to an assignment lacks standing to challenge that assignment." *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) (internal quotation marks omitted). Plaintiffs also argue that Michigan statute does not allow real property to be held in a passive trust. The statute cited by Plaintiffs provides:

> Every disposition of lands, whether by deed or devise, hereafter made, except as otherwise provided in this chapter, shall be directly to the person in whom the right to the possession and the profits shall be intended to be vested, and not to any other, to the use of, or in trust for, such person; and if made to 1 or more persons, in trust for, or to the use of another, no estate or interest, legal or equitable, shall vest in the trustee.

Michigan Compiled Laws § 555.5. The statute executes passive trusts, vesting legal title in the beneficiary. *See* Mich. Law & Practice 2d Trusts § 62 ("[B]y reason of [Michigan Compiled Laws § 555.5], a dry or passive trust is executed, vesting the legal title in the beneficiary."). A passive trust is one where the trustee has no duties, and merely holds title for the beneficiary. *Id.* (citing *Everts v. Everts*, 80 Mich. 222, 227, 45 N.W. 88, 90 (Mich. 1890)). Michigan statute does not divest the interest held by a trustee with powers of disposition or management concerning the property. *See* Michigan Compiled Laws § 555.4. Michigan courts have held that a trust is an "active trust" where the trustee is obligated to collect income from lands and pay the proceeds over to the beneficiaries. *See Hunt v. Hunt*, 124 Mich. 502, 504, 83 N.W. 371, 372-73 (Mich. 1900). That is essentially the case here, as Defendant holds title to the property and is required to disburse proceeds

to the investors holding pass-through certificates. The Court concludes that the trust here is not a passive trust barred by Michigan Compiled Laws § 555.5.

Plaintiffs contend that Defendant did not own an interest in the indebtedness secured by the mortgage, and was therefore not permitted to foreclose by advertisement. Compl. ¶¶ 7-9. The Court disagrees. Defendant held a mortgage which was contingent upon the satisfaction of the promissory note. The Michigan Supreme Court has held that such a mortgage is an "interest in the indebtedness" which permits the mortgage holder to foreclose by advertisement. *Residential Funding Co., L.L.C. v. Saurman*, 490 Mich. 909, 805 N.W.2d 183 (Mich. 2011). The Court therefore concludes that Count I of Plaintiffs' Complaint fails to establish fraud or irregularity sufficient to toll the redemption period.

**B. Improper Adjournment of the Sheriff's Sale**

In Count II, Plaintiffs allege that the sheriff's sale was improperly adjourned, in violation of Michigan Compiled Laws § 600.3220. This statute provides:

> Such sale may be adjourned from time to time, by the sheriff or other officer or person appointed to make such sale at the request of the party in whose name the notice of sale is published by posting a notice of such adjournment before or at the time of and at the place where said sale is to be made, and if any adjournment be for more than 1 week at one time, the notice thereof, appended to the original notice of sale, shall also be published in the newspaper in which the original notice was published, the first publication to be within 10 days of the date from which the sale was adjourned and thereafter once in each full secular week during the time for which such sale shall be adjourned. No oral announcement of any adjournment shall be necessary.

*Id.* Plaintiffs assert that notices relating to adjournment of the sale were never published. Compl. ¶ 21. The sheriff's deed indicates that the sale was adjourned "on a weekly basis . . . to January 3, 2012 by posting a notice of adjournment at the place of sale for Oakland

County, Michigan." Def.'s Br. Ex. D at 1. This process satisfies the requirements of the statute. Because the sale was not adjourned for more than one week at a time, the statute did not mandate publication of the notice in the newspaper; posting at the place of sale was sufficient. Plaintiffs have not alleged facts that would establish a violation of the statute.

Moreover, even if the facts alleged by Plaintiffs constituted a violation of the statute, the Court is not persuaded that the violation would provide grounds for setting aside the sheriff's sale. Under Michigan law, a sheriff's sale may be set aside based on defective notice only where the plaintiff demonstrates prejudice resulting from the defect. *Worthy v. World Wide Fin. Servs.*, 347 F. Supp. 2d 502, 510-11 (E.D. Mich. 2004). Here, Plaintiffs have failed to establish any harm resulting from a defective notice of adjournment. They have not redeemed the property, despite learning that the sheriff's sale was held on January 3, 2012. In fact, because the redemption period has not yet expired, Plaintiffs are still entitled to redeem the property. Allegations of defective notice of adjournment have been held insufficient to set aside a sheriff's sale where the borrower has not tendered payment to redeem the property. *See id.*; *Sweet Air Inv., Inc. v. Kenney*, 275 Mich. App. 492, 502-03, 739 N.W.2d 656, 662 (Mich. Ct. App. 2007).

**C. Loan Modification**

In Count III, Plaintiffs assert that BAC Home Loans revoked an agreement to modify their loan. Compl. ¶ 30. Defendant argues that this claim is barred by Michigan's statute of frauds, which provides:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature

7

by the financial institution:

(a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
(c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Michigan Compiled Laws § 566.132(2). A party may not bring a claim, "no matter its label," against a financial institution to enforce an oral promise that falls within the scope of this statute. *Crown Tech. Park v. D&N Bank, F.S.B.*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000). At the hearing, Plaintiffs' counsel admitted that Plaintiffs do not have a signed writing containing a promise to modify their loan. The alleged loan modification agreement is therefore unenforceable.

Plaintiffs also contend that Defendant violated several provisions of Michigan's loan modification statute, Michigan Compiled Laws § 600.3205a *et seq*. Defendant argues that the statute does not govern the foreclosure in this case because Plaintiffs had not claimed the property as their principal residence. The statute provides that a party seeking to foreclose by advertisement must send the borrower certain notices "before commencing a proceeding under this chapter to which section 3204(4) applies." Michigan Compiled Laws § 600.3205a(1). Section 3204(4), in turn, states:

A party shall not commence proceedings under this chapter to foreclose a mortgage of property claimed as a principal residence exempt from tax under [Michigan Compiled Laws § 211.7cc] if one or more of the following apply . . . .

Michigan Compiled Laws § 600.3204(4). Thus, a foreclosing party must only send the

8

loan modification notice to the borrower if the property subject to the mortgage has been claimed as a principal residence under Michigan Compiled Laws § 211.7cc. A property owner claims a property as his or her principal residence "by filing an affidavit . . . with the local tax collecting unit in which the property is located." Michigan Compiled Laws § 211.7cc.

Plaintiffs claim that the Bloomfield Hills home has been their principal residence since 2003. Defendant disputes this, and maintains that the property has been rented to a tenant since at least July 2008. The tenant, Kenneth Stern, claims that he has resided at the property with his wife since July 2008 and that Plaintiffs do not live there. Stern Decl. ¶¶ 2-6, Def.'s Br. Ex. F. Regardless, it is undisputed that Plaintiffs did not file an affidavit of principal residence until January 23, 2012, a few weeks after the sheriff's sale was held. *See* Pls.' Br. Ex. D. There is no indication that the Michigan loan modification statute applies retroactively where a borrower subsequently files a principal residence affidavit. The Court therefore concludes that the notice requirements of Michigan Compiled Laws § 600.3205a did not apply to the foreclosure of Plaintiffs' property. The statute's remaining requirements are structured as steps in the process that begins with the sending of the loan modification notice pursuant to § 600.3205a. Michigan Compiled Laws §§ 600.3205b-c. Because the initial notice requirement does not apply to property that is not claimed as a principal residence, the statute's other requirements also do not apply.

Plaintiffs argue that if Defendant had merely consulted BAC Home Loans, it would have discovered that the Bloomfield Hills home was Plaintiffs' principal residence. This argument lacks merit for two reasons. First, the statute does not require a foreclosing party

9

to take such measures to determine whether property is a borrower's principal residence. It requires that the property must be "claimed as a principal residence exempt from tax under [Michigan Compiled Laws § 211.7cc]." *See* §§ 600.3205(a)(1); 600.3204(4). The referenced statute provides a specific process for claiming the exemption. The owner must file an affidavit with the local tax collecting unit attesting that the property is his principal residence. *See* Michigan Compiled Laws § 211.7cc. Plaintiffs' failure to follow the process set forth in § 211.7cc is fatal to their claim under the loan modification statute. Second, even if Defendant had contacted BAC Home Loans about whether the Bloomfield Hills home was Plaintiffs' principal residence, it is not clear that the information provided would have been any different. As noted above, it appears that the property was leased to a tenant at the time in question.[1] Furthermore, the Notice of Intent to Accelerate mailed by BAC Home Loans, which is attached to Plaintiffs' brief, indicates that it was mailed to a residence in North Carolina. Pls.' Br. Ex. G. This letter raises significant doubt as to whether BAC Home Loans believed that Plaintiffs' principal residence was in Michigan.

**D. Elliott-Larsen Civil Rights Act**

Plaintiffs assert that Defendant discriminated against them on the basis of religion and national origin with respect to an application for financial assistance, in violation of the ELCRA, Michigan Compiled Laws § 37.2504. Compl. ¶ 40. Plaintiffs specifically

---

[1] At the hearing, Plaintiffs' counsel argued that the property could have been declared Plaintiffs' principal residence based on their intent to return there. The Court disagrees. According to the statute, the affidavit must state "that the property is owned and occupied as a principal residence by that owner of the property on the date that the affidavit is signed." Michigan Compiled Laws § 211.7cc(2).

claim that they were denied the opportunity for a loan modification because they are "of the Chaldean religion and Arabic origin." *Id.* ¶ 41.

Plaintiffs may establish their claim by direct evidence of discrimination or through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Meagher v. Wayne State Univ.*, 222 Mich. App. 700, 710-11, 565 N.W.2d 401, 410 (Mich. Ct. App. 1997). Plaintiffs have not offered any direct evidence indicating that either their religion or national origin was a factor in Defendant's decisions. The Court therefore evaluates Plaintiffs' claim under the burden-shifting framework. Plaintiffs must establish their prima facie case by showing that they suffered an adverse action under circumstances giving rise to the inference of discrimination. *See Wilcoxon v. 3M*, 235 Mich. App. 347, 359, 597 N.W.2d 250, 256 (Mich. Ct. App. 1999). If Plaintiffs establish their prima facie case, the burden shifts to Defendant to come forward with a legitimate nondiscriminatory reason for the adverse action. If such a reason is presented, the burden shifts back to Plaintiffs to show that Defendant's stated reason is a mere pretext for discrimination. *See id.*

Plaintiffs assert that the circumstances of this case give rise to the inference of illegal discrimination because Defendant's decisions did not make economic sense. They claim that they were qualified to receive a loan modification. As noted above, the protections of the Michigan loan modification statute did not apply to the foreclosure process in this case, and the Court is unaware of any legal authority holding that a lender is required to modify a loan simply because the borrower is able to make the reduced payments. While it may be true that Plaintiffs could have made reduced payments, there is no indication that

11

the decision to reject a loan modification and initiate foreclosure proceedings had anything to do with Plaintiffs' religion or ethnicity. Even if this was a poor business decision, as Plaintiffs assert, that does not necessarily suggest discrimination. Plaintiffs also have not identified any individuals outside the protected class who were granted a loan modification under similar circumstances. Plaintiffs have failed to carry their burden, as speculation will not support a discrimination claim.

### IV. Conclusion

Plaintiffs have failed to demonstrate fraud or irregularity sufficient to justify an extension of the redemption period. Because likelihood of success is the most important factor in evaluating a request for injunctive relief, *Systematic Recycling LLC v. City of Detroit*, 685 F. Supp. 2d 663, 671 (E.D. Mich. 2010), the Court declines to consider in detail the remaining factors of the injunctive relief analysis. The Court is not persuaded that the preliminary injunction or temporary restraining order sought by Plaintiffs should issue.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for a preliminary injunction and temporary restraining order is **DENIED**.

                                       s/PATRICK J. DUGGAN
                                       UNITED STATES DISTRICT JUDGE

Copies to:

K. Alexander, Esq.
Trevor M. Salaski, Esq.